# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MARK GROVE,**

    **Plaintiff,**

    v.

**OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION,** *et al.***,**

    **Defendants.**

Case No. 2:18-cv-1492
Chief Judge Algenon L. Marbley
Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Plaintiff, Mark Grove, an inmate in the Chillicothe Correctional Institution ("CCI") at the time he filed his initial and amended complaints (ECF Nos. 8, 107)[1], who is proceeding without counsel, brings this civil rights action under 42 U.S.C. § 1983.[2] (*Id.*) Plaintiff filed his Amended Complaint on May 13, 2020. (ECF No. 107.)[3] In that pleading, Plaintiff names as Defendants Gary C. Mohr; Andrew Eddy, M.D.; John Gardner, M.D.; Beth Higginbotham; Ms. Bottorf; Edward Michelson, M.D.; Robert C. Ryu, M.D.; Abid J. Rana, M.D.; Gary Atrip; Hisham M. Awan, M.D.; Joseph S. Yu, M.D.; Corby Free; Dr. Gary Krisher; Dr. Andrew J. Krieger; Dr. Larry Houts; Roseanne Dove; and 50 Jane and John Doe Defendants. This matter is before the Court for consideration of a motion to dismiss filed by Defendants Michelson, Ryu, Awan, Yu, and Krieger (collectively, the "OSU Defendants"). (ECF No. 111.) Plaintiff has filed a response

---

[1] On January 11, 2021, Plaintiff filed a Notice of Change of Address indicating that he has been released from CCI and now resides in Georgia. (ECF No. 155.)
[2] The Court dismissed Plaintiff's state law claims on initial screening. (ECF Nos. 11, 16.)
[3] In connection with granting certain Defendants' motions for a more definite statement, the Court directed Plaintiff to file an Amended Complaint. (ECF Nos. 93, 103.)

(ECF No. 150) and the OSU Defendants have filed a reply (ECF No. 153). For the reasons that follow, it is **RECOMMENDED** that the Court **GRANT** the OSU Defendants' Motion to Dismiss.

## I. BACKGROUND

The substantive allegations relating to the OSU Defendants appear to be set forth between Paragraphs 77 through 112 of the Amended Complaint and relate to Plaintiff's "re-broken right arm." (ECF No. 107 at 20-28.) According to these allegations, on June 26, 2015, Plaintiff was seen in the emergency room of The Ohio State University Wexner Medical Center by Drs. Michelson, Krieger, Ryu, Yu, Awan, Does 1-50 and another doctor not named as a defendant in this action. (*Id.* at ¶ 78.) The OSU Defendants "determined that Plaintiff's right arm is re-broken ….and requires surgery to implant an artificial elbow…." (*Id.* at ¶ 79.) According to Plaintiff, the x-ray of his arm revealed that

> Plaintiff's right arm humerus bone is re-broken and re-severed from the bones and screws of the lower arm, i.e. the screw that had been placed through the upper arm humerus bone and into the bones of the lower arm at the elbow area during a previous surgery to attach the upper arm humerus bone to the bones of the lower arm, has broken through the humerus bone and is protruding out from the bones of the lower arm approximately ¾ inch at the elbow area. Only muscles, tendons, veins and nerves attach the upper arm humerus bone to the lower arm elbow area.

(*Id.* at ¶ 77.)

Plaintiff posits that, because the ODRC's Collegial Review Board may not have wanted to pay for the surgery, the OSU Defendants "refused" treatment and "sent [him] back to prison with only their recommendation and request that [he] receive an orthopedic consult and right arm surgery." (*Id.* at ¶ 79.) On July 2, 2015, this request was denied following the collegial review process. (*Id.* at ¶¶ 80, 81.) On July 7, 2015, Plaintiff was advised that the x-rays did not show that his arm was re-broken and that his pain was

arthritis from an old injury.  (*Id*. at ¶ 82.) Plaintiff was similarly advised on July 9, 2015, and he undertook the grievance process that day.  (*Id.* at ¶¶ 83, 84.)

Plaintiff believed the OSU Defendants had provided the incorrect x-rays and medical information to CCI and the ODRC.  (*Id.* at ¶ 86.)   On October 23, 2016, during a consult with a neurosurgeon at OSU, Plaintiff learned that the OSU Defendants had provided the correct x-rays. (*Id*. at ¶ 87.)  Between November 23, 2016 and February 8, 2017, the Doe Defendants denied OSU's request for a consult and arm surgery.  (*Id*. at ¶ 88.)

 On March 30, 2018, Plaintiff obtained a copy of his medical records via counsel.  (*Id.* at ¶ 89.)  Upon his review of these records, Plaintiff discovered that the OSU Defendants had "deliberately concealed" the facts of his arm injury in an effort to "conceal their own medical malpractice and deliberate indifference" to his injury and "for other personal benefits."  (*Id.* at ¶ 90.)

From October 21, 2013, through April 19, 2017, the date on which Dr. Awan performed Plaintiff's elbow replacement surgery, Plaintiff asserts that he suffered unnecessarily as a result of deliberate indifference to his serious medical needs.  (*Id*. at ¶ 91.)  Specifically, Plaintiff alleges active concealment of the nature of his injury and denial of medical care as a result of ODRC contracts and policies.  (*Id.* at ¶ 92.)  Plaintiff states that he was informed that the decision of the Collegial Review Board to deny the request for surgery was final.  (*Id*. at ¶ 93.)

Plaintiff alleges that between June 26, 2015 and April 19, 2017, the OSU Defendants "continuously acted with deliberate indifference to [his] serious medical needs" in violation of his Eighth and Fourteenth Amendment rights.  (*Id*. at ¶¶ 99, 100, 101, 102, 103, 110, 112.)  Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief.

3

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd.*, *P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' … [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir.

2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

Finally, "[p]ro se complaints are held to less stringent standards than formal pleadings drafted by lawyers and therefore are liberally construed." *Olivares v. Michigan Worker's Comp. Agency*, No. 18-2369, 2019 WL 2299250, at *2 (6th Cir. Apr. 16, 2019) (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (vacating dismissal of civil rights complaint and remanding for further proceedings)); *see also Walker v. Miller*, No. 18-3209, 2018 WL 7575709, at *1 (6th Cir. Oct. 17, 2018) ("But we hold pleadings filed by a pro se litigant 'to less stringent standards than formal pleadings drafted by lawyers,' and [we] may not uphold the dismissal of' a pleading by a pro se litigant simply because we think the allegations unlikely.") (quoting *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007)). However, "'pro se plaintiffs are not automatically entitled to take every case to trial.'" *Robinson v. Killips*, No. 18-1485, 2019 WL 1931873, at *1 (6th Cir. Feb. 22, 2019) (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)) (affirming in part and reversing in part dismissal of *pro se* complaint).

### III. ANALYSIS

The OSU Defendants raise two issues in their motion to dismiss. First, they contend that Plaintiff has failed to allege their deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (ECF No. 111 at 4-7.) They also contend that Plaintiff's claims

5

against Defendants Michelson, Ryu, Yu, and Krieger are barred by the applicable statute of limitations.

In response, Plaintiff challenges, under various theories, the argument that his claims are time-barred. For example, Plaintiff contends that his claim did not accrue until on or after March 30, 2018, when he discovered the OSU Defendants are liable under a "danger creation theory." He also cites to the Defendants' alleged "continuing violation." Additionally, he asserts that equitable tolling principles apply due to the Defendants' alleged concealment; his inability to pursue his legal rights as a result of his physical condition; and the exhaustion requirement. Finally, Plaintiff asserts that he plausibly has asserted a claim for relief against the OSU Defendants.[4] (*See generally* ECF No. 150.)

In reply, Defendants reconfirm their initial arguments. Additionally, they assert that Plaintiff has not established any basis for equitable tolling and that neither the state-created danger theory nor the continuing violation doctrine has any applicability here. Finally, they contend that Plaintiff's attempt to invoke the discovery rule is thwarted by the allegations of the Amended Complaint.

---

[4] Plaintiff appears to be asserting his deliberate indifference claim under both the Eighth and Fourteenth Amendments. *See, e.g.,* ¶¶ 92, 110, 112. "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008)). While the deliberate indifference framework is the same, Plaintiff is a state inmate and his claim here is properly analyzed under the Eighth Amendment. *Griffith v. Franklin Cty., Kentucky*, 975 F.3d 554, 566–67 (6th Cir. 2020).

6

Because the conclusion that Plaintiff has failed to state a claim would be dispositive as to all the OSU Defendants, the Court will begin its analysis there. It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011); *see also Taylor v. First Med. Mgmt.,* No. 18-5282, 2019 WL 1313828, at *2 (6th Cir. Feb. 21, 2019) (holding that, to satisfy the subjective component, "the prisoner must show that the defendant recklessly disregard[ed] the substantial risk of serious harm" by showing that "the defendant perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk") (internal quotation marks and citations omitted).

The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess

7

> medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). "A prisoner's allegation that a prison has failed to treat [a prisoner's] condition adequately . . . is evaluated under the effect-of-delay standard[,]" which "'requires the submission of verifying medical evidence to establish "the detrimental effect of the delay in medical treatment."'" *Anthony v. Swanson*, No. 16-3444, 2017 WL 2992224, at *3 (6th Cir. July 14, 2017) (quoting *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citation omitted)). Additionally, "[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010); *see also Santiago*, 734 F.3d at 591 ("[W]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.") (internal quotation marks and citations omitted). Moreover, "a difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim." *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002).

Applying the above principles, Plaintiff has not alleged and therefore failed to state a claim against the OSU Defendants' for deliberate indifference to his serious medical needs. The Amended Complaint contains only the following factual allegations directed to these Defendants. They examined Plaintiff in the emergency room at the Wexner Medical Center on June 26, 2015. (ECF No. 107 at ¶ 78.) They determined that his right arm was re-broken and required surgery to implant an artificial elbow. (*Id.* at ¶ 79.) They recommended and requested that Plaintiff receive an orthopedic consult and right arm surgery. (*Id.*) Their recommendation and request

were communicated to CCI/ODRC officials and the Collegial Review Process was undertaken shortly thereafter. (*Id.* at ¶¶ 80-83.) Dr. Awan performed Plaintiff's elbow replacement surgery on April 19, 2017. (*Id.* at ¶ 91.) Dr. Awan provided follow-up care. (*Id.* at 44-46, Exhibit G.)[5]

Plaintiff's attempt to set forth the OSU Defendants' deliberate indifference based on these limited factual allegations relies solely on conclusory assertions and speculation. For example, Plaintiff asserts that Drs. Michelson, Krieger, Ryu, and Yu "deliberately concealed" his medical condition. (ECF No. 107 at ¶ 90.) This bare and vague allegation is insufficient to support Plaintiff's claim of deliberate difference against these Defendants. Not only does it fail to meet the minimum pleading standard, it is inconsistent with other allegations in the Amended Complaint. First, despite his charge of concealment, Plaintiff alleges that the OSU Defendants' recommendation was communicated to CCI/ODRC officials. (*Id.* at ¶¶ 80-87.) Further, while Plaintiff alleges that he discovered the alleged "concealment" in 2018, he also alleges that, at a Telemed appointment with an OSU neurosurgeon on October 3, 2016, he confirmed that the correct x-rays from his June 26, 2015 visit to the emergency room had been provided to CCI/ODRC. (*Id.* at ¶ 87.) These inconsistent assertions fail to plausibly allege any "deliberate conceal[ment]" undertaken by Drs. Michelson, Krieger, Ryu, or Yu.

Plaintiff also asserts that the OSU Defendants refused him treatment at the time of his examination on June 26, 2015, based on cost considerations. (ECF. No. 107 at ¶ 79.) Not only does this bare statement fail to meet the pleading standards discussed above, such an allegation,

---

[5] The Court may consider orders, matters of public record, and documents referred to in the complaint and attached as exhibits. *See Currier v. First Resolution Inv. Corp.,* 762 F.3d 529, 533 (6th Cir. 2014) (citing *Henry v. Chesapeake Appalachia, L.L.C.,* 739 F.3d 909, 912 (6th Cir. 2014)). Thus, the Court may properly consider this Exhibit.

standing alone, does not state a medical indifference claim.  *Willard v. Ohio Dep't of Rehabs. & Corr.*, No. 2:19-CV-4959, 2019 WL 6609219, at *5 (S.D. Ohio Dec. 5, 2019), *report and recommendation adopted sub nom. Willard v. Ohio Dep't of Rehab. & Corr.,* No. 2:19-CV-4959, 2020 WL 3166675 (S.D. Ohio June 15, 2020) (citing *Winslow v. Prison Health Serv.*, 406 F. App'x 671, 674 (3d Cir. 2011) ("[T]he naked assertion that Defendants considered cost in treating [the inmate's condition] does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment.")); *see also Hendricks v. Kasich*, No. 2:12-CV-729, 2014 WL 2006800, at *11-12 (S.D. Ohio May 16, 2014) (collecting cases).

Additionally, Plaintiff alleges that all the OSU Defendants exhibited "continuing intentional deliberate indifference" through the date of his elbow replacement surgery in April 2017.  (ECF No. 107 at ¶¶ 91, 99-103.)  These vague allegations simply do not provide the level of factual support sufficient to plausibly allege deliberate indifference.  Even under a broad reading of the Amended Complaint, Plaintiff fails to cite to any other specific actions taken by any of the OSU Defendants beyond those set forth above.  He also fails to cite to any specific inaction on their parts sufficient to suggest "continuing deliberate indifference."  By way of example, Plaintiff fails to allege any facts from which it could be determined that he had any additional contact or continued treatment relationship with Drs. Michelson, Krieger, Ryu and Yu beyond June 26, 2015.  Further, while Plaintiff alleges that Dr. Awan performed Plaintiff's surgery in April 2017, Plaintiff does not set forth any allegations plausibly suggesting Dr. Awan's deliberate indifference in the interim.  Likewise, aside from alleging their referral and recommendation and Dr. Awan's surgical services, Plaintiff fails to allege that these Defendants were able or obligated to provide or direct the terms or timing of his medical care relating to his right arm.  To the

extent that a continued denial of care or delayed care could form the basis for liability under the Eighth Amendment, Plaintiff's bare allegations of liability simply do not connect the OSU Defendants' actions to such a claim.

Finally, Plaintiff also appears, at least to some extent, to allege discrimination within the context of "the systemic failures in ODRC's healthcare system." (ECF No. 107 at ¶¶ 28-36.) To the extent that Plaintiff is attempting to assert a discrimination claim, any such claim as it relates to the OSU Defendants also is wholly undeveloped and lacking in factual support.

In sum, it is not possible to infer from the vague, general, and conclusory assertions set forth in the Amended Complaint that the OSU Defendants consciously disregarded Plaintiff's medical condition. Plaintiff's allegations simply do not support plausible inferences that any of these Defendants had the requisite subjective state of mind necessary to satisfy the "deliberate indifference" test set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994). Because the Plaintiff has failed to sufficiently allege that any of the OSU Defendants acted with deliberate indifference to his serious medical needs, it is **RECOMMENDED** that the Court **GRANT** the OSU Defendants' Motion to Dismiss**.** Accordingly, the Court need not address the issue of whether Plaintiff's claims against particular OSU Defendants are time-barred.

## IV. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that the Court **GRANT** the OSU Defendants' Motion to Dismiss. (ECF No. 111.)

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

Date: January 28, 2021                              /s/ *Elizabeth A. Preston Deavers*
                                                    ELIZABETH A. PRESTON DEAVERS
                                                    UNITED STATES MAGISTRATE JUDGE